UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 10-CR-20767-KING

UNITED STATES OF AMERICA

vs.

LAWRENCE S. DURAN,
MARIANELLA VALERA,
JUDITH NEGRON,
MARGARITA ACEVEDO
    aka Margarita De La Cruz,
AMERICAN THERAPEUTIC
CORPORATION,
and
MEDLINK PROFESSIONAL
MANAGEMENT GROUP, INC.,

           Defendants.
_____/

## THE GOVERNMENT'S MOTION FOR A $1 MILLION CORPORATE SURETY BOND FOR DEFENDANT NEGRON

The United States hereby renews its request for a $1 million corporate surety bond for defendant Judith Negron as the appropriate bond to reasonably assure that the defendant will not flee prior to trial.

### BACKGROUND

**Procedural Background**

On October 21, 2010, the United States filed a Motion for Pre-Trial Detention For Defendants Duran and Valera. At the Initial Appearance held that day, the United States requested a $1 million corporate surety bond for defendant Negron. Magistrate Judge Torres, holding that only after a full hearing could a determination be made whether defendant Negron should be treated differently than defendants Duran and Valera, *sua*

1

*sponte* set a detention hearing for defendant Negron to take place at the same time as that for defendants Duran and Valera.  Judge Torres further noted that he believed $1 million bond was likely to be tantamount to detention for Negron.

**Factual Background**

The United States incorporates by reference all of the reasons stated in its Motion for Pre-Trial Detention for Defendants Duran and Valera, filed October 21, 2010.  (DE 26.)  In addition, the United States offers the following information regarding defendant Negron:

1. Negron was an integral member of the top-level management team that masterminded and executed the $200 million fraud against the Medicare program that is the subject of this case.  Negron was the Vice President of Medlink Professional Management Group, Inc. ("Medlink").  According to witnesses, from her position at Medlink, she ran the day-to-day business of American Therapeutic Corporation (ATC) hand-in-hand with Duran and Valera.

2. Negron drew a large monthly salary from Medlink, but Medlink's money all came from funds Medicare paid to ATC.  Medlink was paid $30,000 per facility per month to "manage" ATC.  In reality, Medlink was simply a vehicle for Duran, Valera, and Negron to transfer money out of ATC and into their own pockets.  ATC had seven facilities in operation during much of the time period of this fraud.  This means that ATC would pay Medlink $150,000 per month, or $1.8 million per year.  Duran was the owner of Medlink and co-defendant Judith Negron was the minority owner.  From 2004 through the

present, ATC has transferred more than $10 million in Medicare funds to Medlink as payment for these purported management and consulting fees.

3. ATC billed the Medicare program $200 million and was paid over $83 million. That vast majority of that $83 million is now missing. In a related case, 10-23765-CIV-MARTINEZ, on October 19, 2010, Judge Martinez entered an Order restraining all assets of the defendants in this case plus two additional companies owned and operated by the defendants in this case. As of the filing of this document, the resulting tally from the banks who were served with the order was just over $750,000 restrained. Even accounting for normal overhead for ATC's seven facilities since 2004, there are still tens of millions of dollars missing and available for the principals of these companies – Duran, Valera, and Negron – to flee and live comfortably overseas.

## RELEVANT LAW

Under the Bail Reform Act, Title 18, United States Code, Section 3141, *et seq.*, federal courts are empowered to order a defendant's detention pending trial upon a determination that the defendant is either a danger to the community or a risk of flight. *See* 18 U.S.C. § 3142(e) ("no condition or combination of conditions would reasonably assure the appearance of the person as required and the safety of any other person and the community"). A finding of risk of flight must be supported by a preponderance of the evidence. *United States v. Quartermaine*, 913 F.2d 910, 917 (11th Cir. 1990); *United States v. King*, 849 F.2d 485, 489 (11th Cir. 1988); *see also United States v. Stewart*, No. 01-4537, 2001 WL 1020779 (4th Cir. Sept. 6, 2001) (unpublished) (citing *United States v. Hazime*, 762 F.2d 34, 37 (6th Cir. 1985)).

The court may set a high bond in the alternative of detention, even if the court believes that bond to be, practically, tantamount to detention for the defendant because of lack of means. The test is not whether detention would be the practical result, but whether the amount is sufficient to prevent flight of the defendant. This Court and the 11th Circuit, joined by several other circuits have recognized that "the setting of financial conditions which the defendant cannot meet does not always contravene the statute." *United States v. LeClercq*, 2007 WL 4365601 *2 (S.D. Fla. Dec. 13, 2007) (citing *United States v. Wong*-Alvarez, 779 F.2d 583, 584 (11th Cir. 1985) as well as the 9th, and 1st Circuits). *De facto* detention of a defendant who does not have adequate means to meet the bond set does not violate 18 U.S.C. § 3142(c)(2) "if the record shows that the detention is not based solely on the defendant's inability to meet the financial condition, but rather on the district court's determination that the amount of the bond is necessary to reasonably assure the defendant's attendance at trial or the safety of the community." *LeClercq*, 2007 WL 4365601 at *2 (quoting *United States v. Fidler*, 419 F.3d 1026, 1028 (9th Cir. 2005)). The fact that detention results in these instances is "not because [the defendant] cannot raise the money, but because without the money, the risk of flight is too great." *United States v. Jessup*, 757 F.2d 378, 389 (1st Cir. 1990).

## ARGUMENT

This court should set a $1 million corporate surety bond as the requirement for Negron's bail. Anything less would pose too great a risk that this defendant would not appear for hearings and trial in this matter.

The Bail Reform Act lists four factors for courts to consider in the detention analysis: (1) the nature and circumstances of the crimes charged; (2) the history and

4

characteristics of the defendant; (3) the seriousness of the danger posed by the defendant's release; and (4) the evidence of the defendant's guilt. *See* 18 U.S.C. § 3142(g).

While the United States is not requesting detention for Negron, these four factors weigh in favor of a very sizable bond in order to ensure she does not flee:

(1) Negron is charged with a $200 million Medicare fraud that spanned over 8 years. She was one of the owners and operators of these fraudulent companies and she ran the day-to-day business of these companies along with Duran and Valera. Moreover, given the size of this fraud and the enhancements Negron would likely face, her sentence under the Sentencing Guidelines would calculate out to well over the statutory maximum for the one count with which she is charged. Accordingly, she is facing an almost certain ten years in prison if convicted.[1]

(2) Negron, like Duran and Valera, likely has access to the tens of millions of missing Medicare dollars that were paid to ATC but that remain unaccounted for.

(3) Negron worked hand-in-hand with Duran and Valera on this staggering fraud scheme. She, like her co-defendants, has in so doing, demonstrated contempt for both the public fisc and for the well-being of patients purportedly in her care. This Court has every reason to believe that she would continue her pattern of criminal activity if released.

---

[1] Negron is charged in the indictment with one count of conspiracy to commit health care fraud. Her statutory maximum sentence is 10 years. Duran and Valera are each charged with that count as well as eleven counts of substantive health care fraud and one count of conspiracy to defraud the United States and to pay health care kickbacks. Their statutory maximum sentences are 125 years.

5

(4)  The evidence of Negron's guilt, similar to that of her co-defendants, is strong. Witnesses describe her leadership role along with Duran and Valera.  Moreover, federal agents executed search warrants at six sites on the day of Negron's arrest, and the government expects to develop additional evidence as a result.

A $1 million corporate surety bond "is necessary to reasonably assure the defendant's attendance at trial or the safety of the community."  *LeClercq*, 2007 WL 4365601 at *2.  As explained above and in more detail in the United States's Motion for Pre-Trial Detention for Defendants Duran and Valera (DE 26), defendant Negron's means to flee this jurisdiction are substantial.  Negron was an owner and operator of Medlink, a company key to the fraud scheme perpetrated by ATC.  She participated hand-in-hand with Duran and Valera in running both companies and fraudulently claiming $200 million from Medicare, resulting in $83 million in payments, most of which remains unaccounted for.  Defendant Negron surely knows where that money is kept and has kept some of it herself.  Her means to flee are nearly as great, or as great, as those of defendants Duran and Valera.  Moreover, the pretrial services report demonstrates that Negron has identified assets of over $500,000 – not including those she has hidden throughout the course of this fraud scheme.  Regardless of whether Negron avers that she can raise the money to obtain the requested bond, "without the money, the risk of flight is too great." *United States v. Jessup*, 757 F.2d 378, 389 (1st Cir. 1990).

## CONCLUSION

For the same reasons as explained in the Government's Motion for Pre-Trial Detention for Defendants Duran and Valera, and for the reasons stated above, this court should find that defendant Negron is a risk of flight absent a sizable bond and that a $1 million corporate surety bond is appropriate because "without the money, the risk of flight is too great." *Jessup*, 757 F.2d at 389.

Respectfully submitted,

Denis J. McInerney
United States Department of Justice
Chief, Criminal Division, Fraud Section

By: _____
Jennifer L. Saulino
Florida Special Bar No. A5501494
Joseph S. Beemsterboer
Florida Special Bar No. A5501439
Trial Attorneys
U.S. Department of Justice
1400 New York Avenue, NW
Washington, DC 20005
Phone:  202-445-9674
Fax:  202-514-7021
Jennifer.Saulino@usdoj.gov

## **CERTIFICATE OF SERVICE**

On this 25th day of October, I hereby certify that, the undersigned electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

                                                 /s/
                                 JENNIFER L. SAULINO
                                 Trial Attorney
                                 United States Department of Justice
                                 1400 New York Ave., NW
                                 Washington, DC  20005
                                 Tel: (202) 445-9674 (mobile)